No. 81-48

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

DAN RING, BOB WOLTER, TIM WILLIAMS,
LOUIS MERTZIG, DALE OLSEN, BOB MARTIN,
ROBERT GOODY, JERRY THOMPSON, FRED BAUM,
et al.,

        Plaintiffs and Respondents,

 vs.

JAMES HOSELTON, d/b/a HOSELTON FRAMING;
M.D. O'CONNELL and DONALD BENNETT, d/b/a
BENNETT BUILDERS, FIRST SECURITY BANK,
AETNA INC.,

        Defendants and Appellants.

---

Appeal from: District Court of the Third Judicial District,
      In and for the County of Deer Lodge
      Honorable Robert Boyd, Judge presiding.

Counsel of Record:

 For Appellants:

  Poore, Roth, Robischon & Robinson, Butte, Montana
  Douglas Buxbaum argued and and Urban Roth argued,
   Butte, Montana
  Henningsen, Purcell & Genzberger, Butte, Montana
  James Purcell argued, Butte, Montana

 For Respondents:

  Knight, Dahood, McLean & Everett, Anaconda, Montana
  David McLean argued, Anaconda, Montana
  Johnson, Skakles and Kebe, Anaconda, Montana
  Greg Skakles argued, Anaconda, Montana

---

      Submitted: December 7, 1981

      Decided: April 15, 1982

Filed: APR 15 1982

*Thomas J. Kearney*
          Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiff carpenters claimed penalties for late payment of wages due under a working agreement with James Hoselton, d/b/a Hoselton Framing (Hoselton), subcontractor, and W. D. O'Connell, and Donald Bennett, d/b/a Bennett Builders (Bennett), the prime contractor. Bennett cross-claimed against Aetna Casualty & Surety Co. (Aetna) for failure to pay Bennett as required by a labor and materials bond issued to Hoselton as subcontractor, requesting punitive damages and attorney's fees because of Aetna's alleged bad faith. The District Court of Deer Lodge County awarded $4,176.48 to plaintiff carpenters, and $35,534.12 damages plus $100,000.00 in punitive damages to Bennett, plus attorney's fees, which were not initially determined. There were extensive post-judgment motions to amend findings and judgment, for new trial, and for relief from findings, conclusions and judgment. Appeal follows denials of all of these motions. We affirm in part and reverse in part.

I.

The key findings of fact and conclusions of law of the District Court are described in this paragraph. Plaintiff carpenters were members of Carpenters Union Local 88 which had a working agreement with Bennett, and Hoselton signed a compliance agreement with Local 88. Hoselton hired plaintiffs as carpenters. Hoselton posted a payment and performance bond with Bennett as Obligee and Aetna as Surety. Hoselton discharged plaintiffs but their severance checks were not postmarked for seven days after discharge, entitling plaintiffs to eight hours pay for each 24 hours which had expired

before payment was made, resulting in the Hoselton obligation to pay plaintiffs a total of $4,176.48. Hoselton walked off the project on February 11, 1979. Aetna did not pay the $4,176.48 under the bond. Written notice of default was sent to Aetna indicating Bennett was exercising his option under the bond to complete the Hoselton framing subcontract in his role as general contractor, and no response was ever received from Aetna. Bennett completed the framing; the balance owing to Bennett for completing the subcontract was $35,534.12, and Aetna declined payment. Aetna's refusal to make payment was found to show bad faith. Because of the bad faith failure of Aetna to honor its obligation, Bennett had to pay the money necessary to complete the Hoselton subcontract, resulting in a heavy burden on Bennett, which caused him to lose his business and his home for which Aetna should respond in punitive damages. Reasonable attorney's fees were due to Bennett because of the failure of Aetna to honor its bond. As a result of these findings, the District Court concluded that the reasonable cost of completion of the Hoselton subcontract was $35,534.12 and Aetna was liable to Bennett in that amount together with attorney's fees and costs; the refusal of Aetna to honor its obligations was wrongful, malicious, arbitrary and in bad faith; Bennett suffered severe financial losses as a result of the bad faith of Aetna, for which Aetna was liable in punitive damages in the amount of $100,000.00; and Aetna was liable to Bennett for attorney's fees as they shall become fixed after a hearing. Judgment was entered in accordance with the findings and conclusions.

Following is a calendar of the significant events

-3-

starting with the entry of judgment.

November 6, 1980. Judgment as previously described entered.

November 17, 1980. Aetna filed motion for new trial, to amend judgment, and for relief from the findings, conclusions and judgment under Rules 52, 59 and 60 of the Montana Rules of Civil Procedure. The Aetna affidavits in support of the motions are extensive. In substance they show that the counsel representing Aetna up to the judgment on November 6, 1980, had severe depression and emotional problems which had extended over a period of years and were unknown to his associates and friends. Subsequent to the November 6, 1980, judgment, counsel was admitted to the stress center in the hospital at Butte. The affidavits show that in the present case, counsel was unable to communicate his problems to his associates, and failed to properly communicate with Aetna. The affidavits set forth facts which are claimed to be sufficient to constitute adequate defenses to the claims in issue; and otherwise set forth facts indicating that counsel had failed to properly represent Aetna in a competent manner, resulting in the entry of the judgment against Aetna. To compound the confusion, the successor counsel for Aetna overlooked noticing the consolidated motions as required under Rules 59 and 60.

December 8, 1980. Motion by plaintiffs and Bennett requesting hearing to determine reasonable attorney's fees provided for in judgment. Notice of hearing set for December 17.

December 12, 1980. Additional Rule 60 motion by Aetna requesting that Aetna be relieved from its omission to

notice the consolidated motions filed on November 17, with the motion based on mistake, inadvertence and excusable neglect. Motion noticed for December 17, 1980.

December 17, 1980. Hearing on motions noticed for this date.

December 22, 1980. Order awarding plaintiffs' attorneys $2,055.00 and Bennett's attorneys $7,500.00 as attorneys' fees. Order denying post-trial motions, finding that no notice of hearing was filed on the November 17 motions under Rules 59 and 60, and no hearing held within the time limits; failure to comply with Rules 59 and 60 caused the December 17 motions to be "deemed denied" and thereby denied the District Court any jurisdiction to deal with the motions; finding that the December 12 motion pursuant to Rule 60 was a "bootstrap" motion asking the court to allow a hearing on the original motion, and was not appropriate; and with a determination that all of the post-trial motions of Aetna were denied.

December 24, 1980. Renewal of Rule 59 and 60 motions by Aetna. Motion noticed for hearing on December 31, 1980.

December 26, 1980. Conditional notice of appeal, in which Aetna contended that the judgment of November 6, 1980, did not become final until the District Court awarded attorney's fees, and in which the appeal was conditioned upon the event that the Supreme Court of Montana might determine November 6, 1980, was the date of final judgment.

December 31, 1980. Order of District Court denying all motions, including post-trial motions.

January 9, 1981. Notice of appeal by Aetna appealing from the final judgment and order of court awarding attorney's fees and from court's orders denying post-trial motions

-5-

under Rules 52, 59 and 60 and also from the judgment dated November 6, 1980.

II.

The following issues are determinative:

(1) Was the November 6, 1980, judgment final prior to the December 22, 1980, order determining attorney's fees?

(2) Should Aetna's post-judgment motions have been considered on their merits?

(3) Was the Bennett deposition admissible without a showing of unavailability for trial?

(4) Did the Aetna bond encompass the penalties awarded to the plaintiffs?

As stated in the first issue, judgment was entered by the District Court on November 6, but the attorney's fee portion of the judgment was not completed until the entry of order on December 22. Our decision on this issue controls the further decision on the post-judgment motions. In this case, the claim of attorney's fees on the part of plaintiffs and Bennett is not based upon a statutory provision awarding attorney's fees, such as in the mechanics lien provisions of our codes. Here, the Aetna bond in substance provides that Bennett shall not be liable for the payment of any costs or expenses of any suit for work or labor performed. It is under that contract provision that the parties seek a recovery of their reasonable attorney's fees. Our question then becomes whether a judgment is final involving attorney's fees based on an agreement which is the subject matter of the action until the actual determination of the attorney's fees. We find the reasoning persuasive in Aetna Casualty & Surety Company v. Giesow (2d Cir. 1969), 412 F.2d 468, 470, in which the Circuit Court stated:

-6-

"Since the plaintiff would not be entitled to counsel fees if there was no breach of the subordination agreement, we believe that the issues of damages and counsel fees are so inexorably interconnected as to make this a single claim (cites omitted). In Rieser v. Baltimore and Ohio Railroad Co., 224 F.2d 198, 199 (2d Cir. 1955), cert. denied, 350 U.S. 1006, 76 S.Ct. 651, 100 L.Ed. 868 (1956), we said that the test of multiple claims was 'whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced.' Under this test it seems quite clear that the claim for counsel fees cannot be enforced apart from the claim for breach of the subordination agreement, and to this extent we have only a single claim here. Cf. Schwartz v. Eaton, 264 F.2d 195 (2d Cir. 1959). There is also some question as to whether the judgment here can properly be said to be 'final,' since reasonable counsel fees are a contractually specified element of damages and plainly the amount of those fees has not yet been determined. See United States v. Burnett, 262 F.2d 55 (9th Cir. 1958). Since we lack jurisdiction, we must dismiss this appeal."

In Union Tank Car Company v. Isbrandtsen (2d Cir. 1969), 416 F.2d 96, the Circuit Court followed the Giesow decision. The court was construing a note which among other provisions provided for the payment of reasonable attorney's fees, costs and expenses. Again, the trial court had entered judgment and awarded costs and attorney's fees to be fixed by further order of the court. In holding that the appeal was premature, the court stated:

"Where attorneys' fees are a mere incident of the litigation itself, particularly when measured in part by the creation of a fund in that litigation, they may often await the outcome of the litigation on trial and appeal. Sprague v. Ticonic National Bank, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1938). Where they are dependent on a contract under construction by the court in the litigation, as here, the contract may more usefully be completely construed on one trial and appeal, . . ." (Underscoring added.) Union Tank Car Company v. Isbrandtsen, 416 F.2d at 97.

The need for elimination of separate appeals is stressed by the same court in Cinerama, Inc. v. Sweet Music, S.A. (2d Cir. 1973), 482 F.2d 66, 70, where the court stated:

> "The final judgment rule is designed not merely to prevent an appeal on an issue concerning which the trial court has not yet made up its mind beyond possibility of change but also to eliminate the need for separate appellate consideration of different elements of a single claim. The burgeoning loads of the courts of appeals mandate strict adherence to this salutary policy." (Court's emphasis.)

While this Court has not yet ruled on the precise issue, it has emphasized that a case should not be appealed until it is totally ready for review, stating in Roy v. Neibauer (1980), ____ Mont. ____, 610 P.2d 1185, 1187, 37 St.Rep. 897, 899:

> "If the case is not ready for review, it should not be appealed . . . This Court does not have the time and the resources to be compelled to independently search the record to determine if all essential issues have first been decided at the District Court level."

In a similar manner, this Court has consistently held that where all of the issues and claims have not been finally adjudicated, it will refuse to hear appeals. See Knight & Co. v. Fort Belknap Indian Agency (1980), ____ Mont. ____, 612 P.2d 1290, 37 St.Rep. 1049; Weston v. Kuntz (1980), ____ Mont. ____, 610 P.2d 172, 37 St.Rep. 855.

In the present case, the claims for attorney's fees on the part of both plaintiffs and Bennett are based on the Aetna bond. In turn, there is a dispute as to whether the Aetna bond requires payment to any or all of the parties under the facts of the case. We conclude that the Aetna bond under its terms does allow the award of attorney's fees to both the plaintiffs and Bennett. Under that circumstance, we find that the judgment was not final on November 6, and

did not become final until the entry of judgment on December 22, determining the amount of fees.

## III.

The District Court entered its findings on November 6, 1980. Aetna moved under Rule 52(b) for the amendment of such findings. In considering the Rule 52(b) motion, the District Court pointed out that it was placed in a difficult position because it was not able to consider matters outside of the record made in support of the Rule 59 and Rule 60 motions because a Rule 52 motion has to be based on the record as it existed at the time the findings were made. The District Court concluded that it must deny the Rule 52 motion. We affirm that ruling.

On November 17, Aetna also filed its motion for a new trial under Rule 59. Aetna failed to serve its motion for new trial within the ten day period provided under Rule 59(b) as follows:

> "Time for motion. A motion for a new trial shall be served not later than 10 days after service of notice of the entry of the judgment."

Our holding that the judgment did not become final until the entry of judgment on December 22 is not controlling as to this motion. A Rule 59 motion may be made either before or after entry of judgment, subject to the time period of ten days as specified in Rule 59(b). The rule is clearly stated in 6A MOORE'S FEDERAL PRACTICE ¶ 59.09[1], at 59-196 (2d ed. 1979) as follows:

> "Under the early English common law 'the motion for a new trial preceded the entry of judgment, which was not entered upon the verdict as a matter of course, nor at all until after the first four days of the next term after trial.' Rule 59(b) requires that a motion for new trial be served 'not later than 10 days after the entry of the judgment.' This wording was designed to be broad enough to permit the motion

-9-

> to be made both <u>before</u> and <u>after the entry of the judgment</u>." (Underscoring added.)

Because the motion for new trial was not served within the ten day period required by Rule 59(b), the motion was therefore deemed denied under the provisions of the last paragraph of Rule 59(d):

> "If the motion is not noticed up for hearing and no hearing is held thereon, it shall be deemed denied as of the expiration of the period of time within which hearing is required to be held under this Rule 59."

The District Court properly concluded that the motion for new trial was deemed denied and that the court could not consider the matter further. This follows the holdings of this Court to the effect that the time and procedural limitations for motions under Rule 59, M.R.Civ.P. are mandatory. See Armstrong v. High Crest Oil, Inc. (1974), 164 Mont. 187, 520 P.2d 1081, and cases therein cited. We therefore affirm the holding of the District Court in its denial of the Rule 59 motion for new trial.

Aetna also moved under Rule 60(b) for relief from the final judgment entered against Aetna. The pertinent parts of Rule 60(b) are:

> "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason justifying relief from the operation of the judgment."

Rule 60(c) provides that a motion under Rule 60(b) shall be heard and determined within the times provided by Rule 59 in the case of motions for new trial. The District Court concluded that the failure to notice up the Rule 60 motion caused that motion to be deemed denied in the same manner as the failure to notice up the Rule 59 motion. The District

Court therefore concluded that it no longer had any jurisdiction to deal with the motion. That decision was based upon the District Court's conclusion that its November 6 judgment was final. Because of our holding that the judgment of the District Court did not become final until the determination of the attorney's fees on December 22, 1980, that conclusion no longer is valid.

Because the November 17 motion under Rule 60 was made before the judgment became final, the motion was premature and may be disregarded. As pointed out by Professor Moore, Rule 60(b) allows relief under circumstances where Rule 59 relief is not allowed because it is not timely. 7 MOORE'S FEDERAL PRACTICE ¶ 60.18[8], at 216.1 (2d ed. 1979), states:

> "When operating within the intendment of the amended Rule, which carefully balances the competing principles of finality and relief from unjust judgments, the courts should and do give a liberal construction to 60(b). Nomenclature is unimportant . . . a motion that is made under Rule 59, which is not timely and hence may not properly be considered under that Rule, may, nevertheless, be considered as a motion under Rule 60 when it states grounds for relief under this latter rule."

On December 24, Aetna by its renewal motion again moved under the provisions of Rule 60 for relief from the court's findings of fact, conclusions of law and judgment. Believing it no longer had jurisdiction, the District Court denied the motion on December 31. We have concluded that the order denying such Rule 60 motion should be set aside in order that the District Court may determine the validity of the motion under Rule 60 after an appropriate hearing.

With regard to Rule 60(b) motions, Professor Moore has emphasized the liberal construction of the courts. 7 MOORE'S FEDERAL PRACTICE ¶ 60.22[2], at 247 (2d ed. 1979), states:

"By now, however, there is a considerable body of federal decisions dealing with 'mistake, inadvertence, surprise, or excusable neglect'; and, speaking generally, these decisions have been in marked harmony with the proposition that 60(b) is a remedial rule to be liberally construed.

"On timely application, a party has been relieved from: an order taken against him as the result of an unauthorized stipulation by his attorney; a judgment of dismissal where the failure to file a bill of particulars was due to the over- sight or inadvertence of the clerk of plaintiff's attorney; financial difficulty in procurement of counsel; and from a judgment of dismissal for want of prosecution occasioned by the inad- vertence of plaintiff or his counsel."

We recognize that the District Court may have some difficulty concluding that the facts in this case warrant relief under clause (1) of Rule 60(b) with regard to mistake, inadvertence, surprise, or excusable neglect. It appears that cases can qualify under clause (1) or under clause (6) which is broader because it allows relief for "any other reason justifying relief from the operation of the judgment." It is under clause (6) that Professor Moore discusses instances in which the courts have allowed relief from a judgment because of actions by attorney comparable to those set forth in the present case. 7 MOORE'S FEDERAL PRACTICE ¶ 60.27[2], at 357 (2d ed. 1979), states:

"Similarly, in cases in which a plenary trial was held, but through extraordinary circum- stances the movant's claim or defense was not presented, or was presented in such a manner that the judgment entered against him was akin to a default judgment, relief has been granted on motion under Rule 60(b)(6). In re Estate of Cremidas, for example, the movant, a minor, was represented at the trial (a proceeding to determine heirship) by an attorney who was so inebriated that in effect movant's claim was not presented. The cause had been tried in a remote judicial division in Alaska and movant indicated that no other lawyer was available in the division and she was financially unable to obtain legal assistance from a lawyer in one of the other divisions." (The court grant- ed relief from judgment on the motion made some three years after its entry.)

-12-

Following the above quotation, at page 367, Professor Moore refers to the question of failure of counsel to properly handle a case and states:

> "In L. P. Steuart, Inc. v. Matthews (329 F2d. 234), plaintiff's case was dismissed for failure to prosecute due to the neglect of counsel. Two years later, through different counsel, plaintiff filed a motion to vacate the judgment. In support of the motion were an affidavit from former counsel to the effect that he had been beset with personal problems, related to the illness of his wife and the death of his parents, and an affidavit of plaintiff to the effect that he had made 'numerous inquiries' of former counsel, but that he had 'refused to answer such inquiries,' and from time to time assured plaintiff that the 'case was proceeding and that settlement of it would be made "soon."' The district court denied the motion. The court of appeals reversed, holding that under the circumstances the district court had abused its discretion in denying relief under Rule 60(b)(6). Judge Edgerton observed:
>
> "'Clause (1) of Rule 60(b) is not and clause (6) is broad enough to permit relief when as in this case personal problems of counsel cause him grossly to neglect a diligent client's case and mislead the client.'" (Underscoring added.)

United States v. Cirami (1977), 563 F.2d 26 (2d. Cir.) quoted from L. P. Steuart, Inc. and Professor Moore in reaching the conclusion that the attorney's mental disorder which induced him both to neglect his duties and to assure his client that he was attending to them, was a sufficient basis for granting relief under clause (6) as "other reason justifying relief." This conclusion is consistent with Klappportt v. United States (1949), 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266, in which the Supreme Court determined that the absence or unavailability of counsel which is unavoidable should support relief from a judgment. In addition, this Court has pointed out that the degree of prejudice resulting to other parties is a factor to be

-13-

considered. Ming v. District Court (1970), 155 Mont. 84, 466 P.2d 907.

Here, the facts set forth in the Aetna affidavits indicate a situation where counsel for Aetna, because of emotional problems, was unable to adequately defend the rights of his clients before and during trial. The affidavits indicate a failure to introduce factual evidence, to prepare and submit findings and conclusions, and to keep the client apprised of the status of the case. All of these may also have contributed to the facts upon which the District Court concluded that punitive damages were appropriate because of the action and lack of action on the part of Aetna. Under these circumstances, equity does require that the District Court hold a hearing and determine if under all the facts, it is proper to vacate the judgment and have a trial on the merits in order to allow Aetna to have its day in court. Rule 60 relief is appropriate only where the party can demonstrate that it has a meritorious defense. Marshall v. Monroe & Sons, Inc. (6th Cir. 1980), 615 F.2d 1156. Aetna's motions and affidavit set out a number of defenses which are claimed to be available and also facts sufficient to support such defenses.

As trial counsel will recognize, in the interest of clarity, we have not referred to all of the motions and rulings, and have limited our reference to the essential elements. The procedure was further confused by the conditional notice of appeal filed by Aetna on December 24. This, of course, raised the question of the jurisdiction of the District Court to make any further orders. By such conditional notices of appeal, Aetna attempted to take an

-14-

appeal from the November 6 judgment should it be determined to be final, and in part stated:

> ". . . files this conditional notice of appeal in the event the Supreme Court of Montana determines that November 6, 1980, was indeed the date of final judgment entered by the above-entitled court in this action."

Because the notices of appeal were conditioned upon an action to be taken by this Court at some undetermined time in the future, the notices were ineffective. We hold that the stated conditional notices of appeal were totally ineffective and may be disregarded. As a result, the notice of appeal upon which the present appeal by Aetna is based is the January 9, 1981, notice of appeal which did cover the final judgment, order awarding attorney's fees, and order denying post-trial motions as well as the judgment of November 6, 1980.

IV.

Aetna contends that the Bennett deposition was not admissible under Rule 32(a)(3), M.R.Civ.P., in the absence of a showing that Bennett was not available. Aetna argues that because the deposition was wrongly admitted, there was no competent evidence to support a case in favor of Bennett against Aetna and requests that the Bennett complaint be dismissed. Bennett argues that Rule 32(a)(3)(D) provides that a trial judge may admit a deposition if exceptional circumstances exist which make it desirable in the interests of justice to allow the deposition. We do not find it necessary to consider the numerous cases cited in support of both views. In this instance, the District Court concluded that because of the many hearings prior to trial and the many presentations made to the court that the case would be

submitted on deposition and agreed statements of facts, the objection to the introduction of the deposition was overruled. No facts are set forth which suggest that the District Court was in error in reaching this decision. We affirm the court's decision to admit the Bennett deposition in evidence in its entirety.

V.

Did the Aetna bond encompass the penalties in the amount of $4,176.48 for which plaintiff carpenters sought recovery? Aetna contends that its bond did not specifically provide for penalties and therefore that Aetna can be required to pay only wages as distinguished from penalties for late payment of wages. In substance the bond provides that if Hoselton shall promptly make payments to all claimants for all labor and material used then the obligation is to be void. Otherwise, as in this case, Aetna agrees with Bennett that every claimant "who has not been paid in full" before the expiration of 90 days after the date on which the labor was performed, may sue on this bond "for such sum or sums as may be justly due claimant." The District Court determined that the penalties were justly due to plaintiff carpenters under their written agreements. Such obligations come under the express provisions of the bond. There is no restriction in the bond which limits Aetna's liability in the manner suggested. We approve the holding of the District Court.

VI.

We affirm the judgment of the District Court as contained in its judgment of November 6, 1980, and its order determining fees of December 22, 1980, subject to the following:

The order of the District Court dated December 31, 1980, denying the Rule 60 motion of Aetna is vacated and the

-16-

District Court is instructed to hold such hearings and take such other steps as it finds to be appropriate in order to consider Aetna's Rule 60 motion on its merits.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

Justices

Mr. Justice Frank B. Morrison, Jr., dissenting:

Judgment in this case was entered by the District Court on November 6, 1980. The attorney's fee issue was not completed until December 22, 1980. Had an appeal been taken from the November 6 judgment I have no doubt that this Court would have overruled a motion to dismiss the appeal as premature. Our holding surely would have been that the judgment became final November 6 and the notice of appeal filed from that judgment would be effective. Here, the majority attempts to fashion a rule to suit its purpose in an attempt to fashion an equitable result at the expense of an orderly and stable civil procedure.

The majority, knowing its position is weak, attempts to distinguish between Rule 60 and Rule 59 motions. The majority mistakenly relies upon 7 MOORE'S FEDERAL PRACTICE ¶ 60.18[8], at 216.1 (2d ed. 1979). Rule 60(c) of the Montana Rules of Civil Procedure provides that Rule 60 motions shall be heard and determined within the times provided by Rule 59. There is no federal counterpart to Rule 60(c). Therefore, MOORE'S is inapplicable.

I have always felt that litigants should "have their day in court" and that liberal construction should be given to procedural rules in order that this end might be facilitated. However, to achieve the result here wrought by the majority, requires a rewriting of the rules. This I will not do.

The District Court should be affirmed.

_____
Justice

Mr. Justice John C. Sheehy, concurring and dissenting:

I concur in the affirmance of the judgment of the District Court. I dissent respectfully from the remand for reconsideration of the Rule 60 motions.

Principally, I see no reason to hold the District Court in error where the problems surrounding the Rule 60 motions were created through the disregard by Aetna's counsel of the rudimentary rules of civil procedure in post-trial proceedings, as governed by the Montana practice.

It is correctly stated in the majority opinion that once Aetna's counsel failed to notice up his Rule 59 motions for new trial or amendment of judgment within 10 days (Rule 59(d)) the "court could not consider the matter further." The reason is set out in our earlier case of Leitheiser v. Montana State Prison (1973), 161 Mont. 343, 348, 505 P.2d 1203, 1206, where we said:

> "The district court was without jurisdiction to grant or deny a motion for a new trial on March 2, 1972. By operation of the self-executing provision of Rule 59(d), M.R.Civ.P., the motion for a new trial was 'deemed denied' ('deemed' in this construction has been held to be synonymous with 'considered', 'determined', or 'adjudged') on February 18, 1972."

And further:

> ". . . However, once the self-executing denial of a motion under Rule 59(d) becomes effective, any subsequent order by the district court concerning that motion is outside the district court's jurisdiction and, consequently, null, void, and without effect." 161 Mont. at 348.

The majority opinion ignores, however, the provision of Rule 60(c) that is equally as mandatory and compelling as Rule 59(d). Rule 60(c) provides:

> "Rule 60(c). Time for hearing and determining motions. Motions provided by subdivisions (a)

and (b) of this rule shall be heard and determined within the times provided by Rule 59 in the case of motions for new trials and amendment of judgment."

The overbearing force of Rule 60(c) which is unique to Montana rules (there is no federal counterpart in Rule 60, F.R.Civ.P.) is that motions under Rule 60, such as this case features, are subject to the same limitations under our practice as motions under Rule 59 (there is no federal counterpart to the notice and hearing provisions in our Rule 59, in Rule 59, F.R.Civ.P.). Since this is true, the District Court here properly decided under Leitheiser that it had lost jurisdiction to hear the first Rule 60(b) motion filed by Aetna's counsel. The first motion was "deemed denied," and so the motion had been "determined" in the legal sense.

Time and again, in opinions, in seminars, in speeches by members of this Court before meetings of the State Bar, we have stressed the jurisdictional traps that lie in the post-trial motions, and have urged counsel practicing in the trial courts of this state to know and observe the same. It was not any act, bent or proclivity of the district judge that created Aetna's problem about its Rule 60(b) motion. It was the failure of Aetna's counsel to follow the plain provisions of Rules 59 and 60. I am unable to explain to Leitheiser, to Armstrong (c.f. 164 Mont. 187, 196, 520 P.2d 1081, 1086), to Marvel Brute Steel Bldg. ((1980), c.f. ____ Mont. ____, 616 P.2d 380, 382, 37 St.Rep. 1670), and to a host of other litigants why Rule 59 deprived their district courts of jurisdiction to act, but Rule 60 does not operate in the same way here. I find no satisfactory explanation in the majority opinion.

-20-

In a recent newspaper poll among the state bar members, we learned that the divagations of this Court from established precedent raised a problem for state lawyers. They reported that every District Court decision should be appealed to avoid malpractice claims, because the loser in the District Court may benefit from the planetary decisions of this Court. We have here, perhaps, an example.

The majority opinion does not distinguish between the first Rule 60(b) motion of Aetna's counsel and the second Rule 60(b) motion, again filed before final judgment, that the District Court labelled a "bootstrap motion."

The second Rule 60 motion was filed by Aetna's counsel on December 12, 1980. It is _not_ a motion addressed to the judgment, final or partial. It is titled "Rule 60 Motion for Relief from Final Order or Proceeding." It moves the District Court for an order "relieving the defendant, Aetna Casualty Company, from its omission to notice the hearing of defendant's consolidated motions for a new trial, to alter or amend judgment and for relief from the court's findings of fact, conclusions of law, and judgment, and other motions filed on November 17, 1980, within ten (10) days after the motion had been served . . ." upon the grounds that Aetna's counsel had failed to notice the motions due to "mistake, inadvertence, excusable neglect or for other reasons justifying relief or through an error arising from oversight or omission."

The second Rule 60 motion depends entirely upon the omission of Aetna's counsel to notice up his post-trial motions for hearing. His affidavit in support does not constitute a sufficient excuse, in my judgment, to support the grant of his motion. (I will advert to his affidavit later). It is insufficient in view of the numerous cases

-21-

that have come out of this Court that place a strict duty on counsel to follow the notice and hearing provisions of Rule 59. No diligent counsel should now be able to claim he was unaware of the required procedures. Diligence is required of counsel in the representation of clients.

The second Rule 60 motion asked the District Court to do something it was powerless to do under our decisions. The court could not resurrect the Rule 59 or 60 motions which were dead, functus officio. The District Court had lost jurisdiction. Worse, now this Court has opened a way to undermine the whole structure of our earlier decisions regarding Rule 59 or 60 motions which are "deemed denied." So a lawyer in the future does fail to notice up or procure a hearing within 10 days of his Rule 59 or 60 motions. No matter, he can now file another motion under Rule 60, saying he forgot, or didn't know. He has a viable motion under this majority opinion.

In addition, the majority has succeeded in circumventing Rule 6(b) of the Montana Rules of Civil Procedure, which provides that a court may not extend the time for taking action under Rule 60, except to the extent and under the conditions stated in the rule.

Be that as it may, the bootstrap Rule 60(b) motion should be denied as a matter of law, assuming it was otherwise timely. Its basis is the claimed excusable neglect of Aetna's counsel. His affidavit in support of his bootstrap motion recites that at the time he fashioned the first motions, he was heavily burdened with other matters, including the responsibility for 150 files in active litigation, numerous pieces of correspondence, preparing and filing a reply brief on behalf of the state in United States v.

-22-

Montana then on appeal in the United States Supreme Court, and a necessary trip to Washington, D.C. in connection with that case; and "numerous other matters which precluded his giving this matter the attention that it deserved." In Link v. Wabash Railroad Co. (1962), 370 U.S. 626, 633-634, 82 S.Ct. 1386, 1390, 8 L.Ed.2d 734, 740, the high court imputed the neglect of the attorney to the party and refused Rule 60 relief because of counsel's unexcused conduct. The court declared that since the client voluntarily chose the attorney as his representative in the action, the party could not avoid the consequences of the acts and omissions of his freely selected agent. In Schwarz v. United States (2d Cir. 1967), 384 F.2d 833, 836, the court of appeals upheld the denial of a motion for relief where the attorney failed to prosecute his client's case, occasioned by the fact that the attorney had undertaken to handle more cases than he could manage and had neglected plaintiff's case. In Kostenbauder v. Secretary of H.E.W. (U.S.D.C. Md. Pa.2 1976), 71 F.R.D. 449, 21 F.R.Serv.2d 1186, relief from summary judgment was denied where the previous attorney failed to file opposition briefs, and it was claimed that the attorney was running for political office, had a large caseload and had lost a key employee. In essence, the courts are saying that a large and busy practice is the norm for trial attorneys and that such a business does not justify relief from ordinary neglect.

In his affidavit supporting his bootstrap motion, Aetna's counsel does not accuse himself of _gross_ negligence. If he could state gross negligence, perhaps his case would come under Rule 60(b)(6), the residual clause of that rule.

-23-

Clause 60(b)(1), covers _excusable_ neglect; presumably clause 60(b)(6) covers _inexcusable_ _negligence_, since the provisions of clause (b)(1) and (b)(6) are mutually exclusive. Since Aetna's counsel did not claim gross negligence, he cannot rely upon clause (b)(6).

It should be remembered that through all of this litigation, Aetna has been represented by two independent law firms, each respectively looking out for the interests of Aetna as against Donald Bennett and all of the plaintiffs. One law firm represented defendant M. D. O'Connell and Aetna Casualty Company where their interests coincided (Aetna claimed to have an indemnity right against M. D. O'Connell for any losses sustained in this litigation). A separate law firm represented Aetna as a defendant against all of the plaintiffs, against defendant Donald Bennett, and also against M. D. O'Connell on the indemnity cross-claim. As to the issues involved here in the successful cross-claim of Donald Bennett, the interests of these two law firms coincided in their representation of Aetna. Each made Rule 59 motions. Each failed to notice up or to procure a hearing within the ten day period required by Rule 59(d).

The majority opinion purports to have found an escape hatch as to the first Rule 60 motion of Aetna, the one based on the illness of its attorney. The judgment for Bennett, the majority conclude, was not final until the award of attorneys fees was decided by the District Court on December 22, 1980. On this basis, the majority resurrect the first Rule 60 motion and send it back for reconsideration. Again the majority ignore the provisions of Rule 60(c), which provide that motions under the rule "shall be heard and determined within the times provided by Rule 59." The

majority concede that motions under Rule 59 may be made prior to final judgment. They apparently see no illogic in holding that under Rule 59 a motion for relief from a pre-judgment order can be taken by a party while denying that same procedure under Rule 60.

The contention that the November 6, 1980 judgment of the District Court was not final was an afterthought by Aetna's counsel. It was never raised in the pretrial motions or on the arguments thereon until after counsel for the successful parties moved the court to fix attorneys fees. Then a light turned on, and there came a flurry of new motions for reconsideration under Rules 59 and 60 on the grounds that the earlier motions, which they had filed, were "premature". Having once proceeded undiligently to deprive the District Court of the power to hear their Rule 59 and 60 motions, they now proceeded diligently but unwittingly to deprive the District Court of jurisdiction to hear their Rule 60 motion after the judgment became final on December 22, 1980. (The court gave oral notice of its attorneys fees decision on December 17, 1980, but the order was not entered and served until December 22, 1980.)

On December 22, 1980, one of Aetna's law firms filed a "conditional notice of appeal by Aetna Casualty and Surety Company, from the judgment entered on November 6, 1980, the summary denial of their motions for new trial or to amend the findings of fact and conclusions of law dated November 28, 1980, and the court's awarding attorney fees on December 17, 1980."

On December 24, 1980, the other of Aetna's law firms filed a conditional notice of appeal on behalf of Aetna Casualty and Surety Company, from the judgment of November

-25-

6, 1980, and supplemented by its award of attorney fees on December 17, 1980, on the ground that it wanted "to insure that its rights on appeal had been preserved and perfected" in the event that the Supreme Court determined that November 6, 1980 was indeed the date of the final judgment.

On December 26, 1980, the counsel who had filed the second conditional notice of appeal, having found that he had not referred to the denial of the post-trial motions in that notice, filed an "amended conditional notice of appeal" from the judgment entered on November 6, 1980, supplemented by the award of attorneys fees on December 17, 1980, and the court orders denying their motions filed pursuant to Rules 52, 59 and 60. Again the notice stated that it was conditional upon whether this Court decided that the November 16, 1980 date was indeed the date of final judgment but that Aetna wanted "to insure that its rights on appeal had been preserved and perfected."

Each law firm subsequently filed, on January 5 and January 9, 1981, ordinary unconditional notices of appeal.

The "conditional" notices of appeal which were filed by Aetna prevented the District Court from considering further the Rule 60 motion based on the illness of the attorney after the judgment became final on December 22, 1980. There is no such animal in our procedure as a "conditional" notice of appeal. Either the District Court has jurisdiction of the cause or the Supreme Court has jurisdiction of the cause. Jurisdiction transfers to the Supreme Court from a District Court upon the filing of a notice of appeal, and thereafter the District Court is powerless to take any substantive action with respect to the cause. Churchhill v. Holly Sugar Corp. (1981), ___ Mont. ___, 629 P.2d 758, 760,

-26-

38 St.Rep. 860; State Etc. v. District Court, Etc. (1980), ___ Mont. ___, 614 P.2d 1050, 1051-52, 37 St.Rep. 1278; Northern Plains, Etc. v. Bd. of H. & Envir. Sciences (1979), ___ Mont. ___, 603 P.2d 684, 688, 36 St.Rep. 2174; McCormick v. McCormick (1975), 168 Mont. 136, 138, 541 P.2d 765, 766.

The "condition" laid down in the conditional notices of appeal, that is whether the right of Aetna to consideration of its Rule 59 and 60 motions depended on whether the judgment was final on November 8, 1980, is no condition at all. Aetna's counsel had misread the law. They had lost the right to any consideration of the Rule 59 and 60 motions by virtue of the time and notice provisions of Rule 59(d) and 60(c). The bootstrap motion under Rule 60 was insufficient on its face. The intention of Aetna that the "conditional" notices of appeal perfected and preserved its rights in this Court is manifested from the instruments themselves. The majority opinion ignores this manifest intention.

An appeal is taken by filing a notice of appeal in the district court (Rule 4(a), M.R.App.Civ.P.). It must specify the party or parties taking the appeal, and designate the judgment or order appealed from. (Rule 4(c), M.R.App.Civ.P.) And finally, by filing the "conditional" notices in compliance with the rules, Aetna fulfilled its desire "to insure that its rights on appeal have been preserved and perfected." A notice of appeal is just that, a notice of appeal. Any other label attached to it is unimportant. The District Court from which the appeal had been taken was divested of jurisdiction under our case law.

Before we leave this matter finally, it should be noted that the District Court was not entirely out in left field in stating that under Montana law, attorneys fees are

-27-

a matter of costs and not of special damages recoverable in the main action.

In Kintner v. Harr (1965), 146 Mont. 461, 480, 408 P.2d 487, 498, this Court states broadly that counsel fees are not "reasonable and necessary expenses as are taxable according to the course and practice of the court." (See section 25-10-201(9), MCA.) Yet we have never overruled Bovee v. Helland (1916), 52 Mont. 151, 155, 156 P. 416, 417, to the effect that if the parties by contract or stipulation intend that attorneys fees are to be paid to the prevailing party as part of the costs or "in addition to other costs," then such attorneys fees shall be assessed by the court as a part of the costs. In other words, under Bovee, the judgment is final before the costs are assessed, and the amount of costs to be awarded is not intrinsic to the finality of the judgment. (Such fees can be attacked in the manner provided for objections to items of costs. Section 25-10-502, MCA.)

In this case, the language of the security agreement that gives right to attorneys fees for the successful parties is "The obligee shall not be liable for the payment of any costs or expenses of any such suit."

The problem of whether attorneys fees are costs or a part of the judgment depends, in my opinion, on whether they are of the nature of special damages recoverable upon pleadings and proof or part of the incidental expenses of suit. This seems to be the tenor of Bovee, supra. It is not an easy question to decide. It is certainly vexing the federal courts. See White v. New Hampshire Dept. of Empl. Sec. (Decided March 2, 1982, slip opinion).

For the reasons foregoing, therefore, I would affirm the District Court judgment.

_____
Justice

-28-

_____
Justice